# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

PAUL HARVEY, MERYL
EICHENBAUM, and ROXANNE
KUZOWSKY, as representatives of a
class of similarly situated persons, and
on behalf of the BED BATH &
BEYOND, INC. 401(K) SAVINGS
PLAN,

                  Plaintiffs,

v.

BED BATH & BEYOND, INC.
401(K) SAVINGS PLAN
COMMITTEE and LAURA
CROSSEN,

                  Defendants.

Case No. 2:23-cv-20376-CCC-SDA

# PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
# SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS
# <u>ACTION SETTLEMENT</u>

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................... iii

INTRODUCTION ................................................................................................... 1

RELEVANT BACKGROUND ............................................................................... 2

I.      PLEADINGS AND MEDIATION ............................................................... 2

II.     OVERVIEW OF SETTLEMENT TERMS .................................................. 3

        A.      Settlement Class ................................................................................ 3

        B.      Relief ................................................................................................. 4

        C.      Release of Claims ............................................................................. 5

        D.      Class Notice and Settlement Administrator ...................................... 6

        E.      Attorneys' Fees, Costs, and Class Representative Compensation ....... 7

        F.      Review by Independent Fiduciary ..................................................... 7

STANDARD OF REVIEW ...................................................................................... 7

ARGUMENT ........................................................................................................... 9

I.      THE SETTLEMENT CLASS SHOULD BE CONDITIONALLY
        CERTIFIED FOR PURPOSES OF SETTLEMENT .................................... 9

        A.      The Proposed Settlement Class Satisfies Rule 23(a) ...................... 10

        B.      The Proposed Settlement Class Satisfies Rule 23(b)(1) .................. 13

II.     THE SETTLEMENT SATISFIES RULE 23(E)(2) .................................... 15

        A.      Legal Standard ................................................................................ 15

        B.      The Class Representatives and Class Counsel Have Adequately
                Represented the Class and Will Continue to do So .......................... 17

        C.      The Settlement was Negotiated at Arm's Length by Experienced
                Counsel and Facilitated by an Experienced Mediator ...................... 17

        D.      The Relief is Adequate and Satisfies All Relevant *Girsh* and
                *Prudential* Factors ........................................................................ 18

1. Complexity and duration of the litigation (*Girsh* Factor 1) .......... 18

2. Stage of litigation (*Girsh* Factor 3) ................................................ 19

3. Risks of establishing liability and damages
   (*Girsh* Factors 4 and 5) ..................................................................... 20

4. Risks of maintaining a class action (*Girsh* Factor 6) .................... 23

5. Ability of defendants to withstanding a greater judgment
   (*Girsh* Factor 7).................................................................................. 22

6. Range of reasonableness of the settlement in light of the best
   recovery and attendant risks of litigation
   (*Girsh* Factors 8 and 9) ..................................................................23

7. Relevant *Prudential* Factors............................................................24

   E.   The Settlement Treats Class Members Equitably Relative to Each
        Other................................................................................................. 26

III.   THE COURT SHOULD APPROVE THE NOTICE PLAN AND
       SCHEDULE A FAIRNESS HEARING ...................................................... 27

CONCLUSION........................................................................................................ 29

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Basile v. Stream Energy Pennsylvania, LLC*,

No. 1:15-CV-01518, 2018 WL 2441363 (M.D. Pa. May 31, 2018) .................... 8

*Beck v. Maximus, Inc.*,

457 F.3d 291 (3d Cir. 2006) ............................................................................. 11

*Beltran v. Sos Ltd.*,

No. CV 21-7454 (RBK/EAP), 2023 WL 319895 (D.N.J. Jan. 3, 2023), *report
and recommendation adopted*, No. CV 21-7454 (RBK/EAP), 2023 WL 316294
(D.N.J. Jan. 19, 2023)....................................................................................... 25

*Boley v. Univ. Health Servs., Inc.*,

337 F.R.D. 626 (E.D. Pa. 2021), *aff'd,* 36 F.4th 124 (3d Cir. 2022) ................ 14

*Byrd v. Aaron's Inc.*,

784 F.3d 154 (3d Cir. 2015) ............................................................................. 10

*Chesemore v. Fenkell*,

829 F.3d 803 (7th Cir. 2016) ........................................................................... 18

*Clark v. Duke U.*,

No. 1:16-cv-1044, 2018 WL 1801946 (M.D.N.C. Apr. 13, 2018) .................... 15

*Clark v. Oasis Outsourcing Holdings Inc.*,

No. 18-81101 (S.D. Fla. Dec. 20, 2018) .......................................................... 26

*Douglin v. GreatBanc Tr. Co.*,

115 F. Supp. 3d 404 (S.D.N.Y. 2015) .............................................................. 12

*Esslinger v. HSBC Bank Nevada*,

No. 10-3213, 2012 WL 5866074 (E.D. Pa. Nov. 20, 2012).............. 19, 20, 21, 23

*Feinberg v. T. Rowe Price Grp., Inc.*,

610 F. Supp. 3d 758 (D. Md. 2022) ................................................................. 27

*Foster v. Adams & Assocs., Inc.*,
   2021 WL 4924849 (N.D. Cal. Oct. 21, 2021) ....................................... 18

*Fuller v. SunTrust Banks, Inc.*,
   No. 1:11-cv-00784 (N.D. Ga. June 5, 2020) ........................................ 18

*Gamache v. Hogue*,
   338 F.R.D. 275 (M.D. Ga. 2021) ........................................................ 10

*Gates v. Rohm & Haas Co.*,
   248 F.R.D. 434 (E.D. Pa. 2008) .................................................... 17–18

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) .....................................................*passim*

*Hacker v. Elec. Last Mile Sols. Inc.*,
   722 F. Supp. 3d 480 (D.N.J. 2024) .................................................. 8, 15

*Henderson v. Emory Univ.*,
   No. 16-2920-CAP (N.D. Ga. Nov. 4, 2020)......................................... 26

*Hochstadt v. Bos. Sci. Corp.*,
   708 F. Supp. 2d 95 (D. Mass. 2010) .................................................. 22

*In re Gen. Instrument Sec. Litig.*,
   209 F.Supp.2d 423 (E.D. Pa. 2001) ................................................... 20

*In re Gen. Motors Corp.*,
   55 F.3d 768 (3d Cir. 1995)....................................................... 9, 15–16

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
   No. 16-md-2687 (JLL)(JAD), 2018 WL 7108059 (D.N.J. Dec. 3, 2018).......... 25

*In re Merck & Co., Inc., Vytorin ERISA Litig.*,
   No. 08-cv-285 (DMC), 2010 WL 547613 (D.N.J. Feb. 9, 2010)....................... 25

*In re NFL Players Concussion Injury Litig.*,
   821 F.3d 410 (3d Cir. 2016), *as amended* (May 2, 2016) .................................. 22

*In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*,

iv

962 F. Supp. 450 (D.N.J. 1997), *aff'd sub nom. In re Prudential Ins. Co. Am.*
*Sales Prac. Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998)...................*passim*

*In re Safety Components, Inc. Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001) ....................................................... 25

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009)................................................... 9, 12, 14

*In re Schering Plough Corp. ERISA Litig.*,
No. 03-1204, 2008 WL 4510255 (D.N.J. Jan. 31, 2008) ................................... 11

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ............................................................ 9, 22

*Karpik v. Huntington Bancshares Inc.*,
No. 2:17-cv-1153, 2021 WL 757123 (S.D. Ohio Feb. 18, 2021) ....................... 26

*Krueger v. Ameriprise Fin., Inc.*,
2015 WL 4246879 (D. Minn. July 13, 2015)...................................... 18

*Kruger v. Novant Health*,
No. 11–CV–02781 (SRN/JSM), 2016 WL 6769066
(M.D.N.C. Sept. 29, 2016) ............................................................ 26

*Lenahan v. Sears, Roebuck & Co.*,
No. 02-0045, 2006 WL 2085282 (D.N.J. July 10, 2006)...........................*passim*

*Luense v. Konica Minolta Bus. Sols. USA., Inc.*,
No. 20cv6827 (EP) (JSA), 2024 WL 2765004 (D.N.J. May 30, 2024)........ 11, 14

*McAlarnen v. Swift Transp. Co., Inc.*,
Civ. A. No. 09–1737, 2010 WL 365823 (E.D. Pa. Jan.29, 2010)...................... 19

*McGowan v. CFG Health Network, LLC*,
No. 322CV02770ZNQRLS, 2024 WL 1340329
(D.N.J. Mar. 28, 2024) ................................................... 18, 22, 23, 25

*McWhorter v. Ocwen Loan Servicing*,

No. 2:15-CV-01831-MHH, 2019 WL 9171207 (N.D. Ala. Aug. 1, 2019)......... 28

*Mehling v. N.Y. Life. Ins. Co.*,
    246 F.R.D. 467 (E.D. Pa. Oct. 24, 2007) ..................................................... *passim*

*Nesbeth v. ICON Clinical Rsch. LLC*,
    No. CV 21-1444, 2022 WL 22893879 (E.D. Pa. Mar. 10, 2022) ................ 24, 27

*Officers for Justice v. Civil Service Comm'n*,
    688 F.2d 615 (9th Cir.1982) ............................................................................... 24

*Pfeifer v. Wawa, Inc.*,
    No. CV 16-497, 2018 WL 2057466 (E.D. Pa. May 1, 2018)................. 17, 26, 28

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ........................................................................................... 27

*Pledger v. Reliance Tr. Co.*,
    No. 1:15-CV-4444-MHC, 2019 WL 10886802 (N.D. Ga. Mar. 28, 2019) ........ 21

*Ramos v. Banner Health*,
    461 F. Supp. 3d 1067 (D. Colo. 2020) .............................................................. 22

*Roubert v. Cap. One Fin. Corp.*,
    2023 WL 5916714 (M.D. Fla. July 10, 2023) *report and recommendation adopted*, 2023 WL 5320195 (M.D. Fla. Aug. 18, 2023).................................... 26

*Sims v. BB&T Corp.*,
    Nos. 1:15-CV-732, 1:15-CV-841, 2019 WL 1995314
    (M.D.N.C. May 6, 2019) .................................................................................... 26

*Stanford v. Foamex L.P.*,
    263 F.R.D. 156 (E.D. Pa. 2009) .................................................................. 12, 14

*Stevens v. SEI Invs. Co.*,
    No. 18-4205, 2020 WL996418 (E.D. Pa. Feb. 28, 2020) ............................ 25, 26

*Strube v. Amer. Equity Inv. Life Ins. Co.*,
    226 F.R.D. 688 (M.D. Fla. 2005) ...................................................................... 24

*Sullivan v. DB Investments, Inc.*,

    667 F.3d 273 (3d Cir. 2011) .............................................................. 23

*Tibble v. Edison Int'l*,

    No. CV 07-5359 SVW (AGRx), 2017 WL 3523737

    (C.D. Cal. Aug. 16, 2017) ............................................................... 19

*Tussey v. ABB, Inc.*,

    850 F.3d 951 (8th Cir. 2017) ........................................................... 19

*Wal-Mart Stores, Inc. v. Dukes*,

    564 U.S. 338 (2011) ........................................................................ 10

**Statutes**

29 U.S.C. § 1104(a) ............................................................................ 11

29 U.S.C. § 1109 ............................................................................... 14

29 U.S.C. § 1132(a) ........................................................................ 9, 14

**Other Authorities**

2 NEWBERG & CONTE § 11.41, at 11–85 .......................................... 9

Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75

    Fed. Reg. 33830 ............................................................................... 7

**Rules**

Fed. R. Civ. P. 23 ............................................................................... 9

Fed. R. Civ. P. 23(a) ............................................................. 10, 11, 12, 17

Fed. R. Civ. P. 23(b) ...................................................................... *passim*

Fed. R. Civ. P. 23(c) .......................................................................... 28

Fed. R. Civ. P. 23(e) ...................................................................... *passim*

vii

## **INTRODUCTION**

Plaintiffs Paul Harvey, Meryl Eichenbaum, and Roxanne Kuzowsky submit this Memorandum in support of their Motion for Preliminary Approval of Class Action Settlement ("Settlement") with Bed Bath & Beyond, Inc. 401(k) Savings Plan Committee and Laura Crossen ("Defendants") regarding their monitoring of the MassMutual Guaranteed Investment Account ("GIA") investment option in the Bed Bath & Beyond, Inc. 401(k) Savings Plan ("Plan").

Under the terms of the proposed Settlement, a Gross Settlement Amount of $1,950,000 will be paid to resolve the claims of Settlement Class Members whose individual Plan accounts were adjusted due to the Market Value Adjustment applied to the Plan's interest in the GIA after Bed Bath and Beyond, Inc. ("BBB") passed a resolution terminating the Plan in 2023. This is a significant recovery for the Class and falls well within the range of negotiated settlements in similar ERISA cases.

For the reasons set forth below, the Settlement is fair, reasonable, and adequate, and merits preliminary approval so that the proposed Settlement Notice can be sent to the Settlement Class. Among other things:

- The Settlement was negotiated at arm's length by experienced and capable counsel overseen by a retired federal judge as mediator;

- The proposed Settlement Class is consistent with settlement classes approved in other ERISA cases;

- The Settlement provides for significant monetary relief that compares favorably to settlements in other cases;

- The Settlement provides class members the option of submitting a Rollover Form or receiving their distribution by check;

- The proposed Settlement Notice provides fulsome information to Class Members about the Settlement, and will be distributed via first-class mail; and

- The Settlement Agreement provides Class Members the opportunity to raise any objections they may have to the Settlement and appear at the final approval hearing.

Accordingly, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order submitted herewith. As parties to the Settlement, Defendants do not oppose the motion.

## **RELEVANT BACKGROUND**

## I.    **PLEADINGS AND MEDIATION**

On September 14, 2023, Plaintiffs commenced this action. Dkt. 1. They alleged that Defendants breached their fiduciary duties by causing the Plan to retain the GIA as the Plan's low-risk capital preservation option, even while the risk that the GIA could lead participants to suffer large negative losses increased. In April 2023 BBB declared bankruptcy and the Plan was later resolved to be terminated. That termination triggered a large negative market value adjustment to be applied to the Plan's investment in the GIA.

Defendants moved to dismiss the Complaint on December 12, 2024. Dkt. 24.

In response, Plaintiffs amended their Complaint to add additional allegations regarding the foreseeability of BBB's bankruptcy and the GIA market value adjustment. Dkt. 24. Defendants then moved to dismiss the First Amended Complaint. Briefing on that motion was complete on March 12, 2024. Dkt. 37, 40. During this process the Parties exchanged preliminary discovery. *See, e.g.*, Dkt. 41.

While Defendants' motion to dismiss the First Amended Complaint was pending, the Court ordered the Parties to mediate with Judge Mark Falk (Ret.). Dkt. 49. On October 29, 2024 the Parties engaged in a mediation session with Judge Falk. Dkt. 52. That mediation was unsuccessful but ended with a mediator's proposal. *Id.* On December 2, 2024 the Parties held a second mediation and reached the Settlement that is the subject of this motion. Dkt. 55.

## II.    OVERVIEW OF SETTLEMENT TERMS

### A.    Settlement Class

The Settlement Agreement calls for certification of the following Settlement Class:

> All Participants whose individual Plan accounts were adjusted by any amount due to the Market Value Adjustment, along with their Beneficiaries and Alternate Payees of record, excluding Defendants.

Lee Dec., Ex. 1 ("Settlement Agreement") § 1.43.[1] Based on the information provided by Defendants, there are approximately 2,100 Settlement Class Members.

---

[1] All capitalized terms have the meaning assigned to them in Article 1 of the Settlement Agreement, unless otherwise defined herein.

Lee Dec. ¶ 3.

## B.    Relief

Under the terms of the Settlement, a Gross Settlement Amount of $1.95 million will be paid to resolve the claims of the Settlement Class Members. Settlement Agreement § 1.22. After accounting for any Attorneys' Fees and Costs, Administrative Expenses, and Class Representative Compensation approved by the Court, the Net Settlement Amount will be distributed to Class Members in accordance with the Plan of Allocation in the Settlement. *Id.* §§ 1.32, 5.1.

Under the Plan of Allocation, the Settlement Administrator[2] shall determine a Settlement Allocation Score for each Settlement Class Member. *Id.* § 5.1. For purposes of making this determination, the Settlement Allocation Score will be equal to the Net Settlement Amount multiplied by the percentage of the Market Value Adjustment charged to the Plan account(s) of that Class Member. *Id.*

Class Members may elect to have their share of the Net Settlement Amount rolled over into an individual retirement account or other eligible employer plan by submitting a Rollover Form. *Id.* §§ 5.4. Any such Class Members who do not submit a Rollover Form will automatically receive their share via check. *Id.*

---

[2] The proposed Settlement Administrator is Analytics Consulting LLC ("Analytics"). *See* Settlement Agreement § 1.42. Analytics has extensive experience administering ERISA settlements and other class action settlements, including ERISA class action settlements in the 3rd Circuit. *See, e.g.*, Lee Dec. Ex. 3 at 17–19.

4

§ 5.4.3. Under no circumstances will any monies revert to Defendants. *Id.* § 5.5.3.

Funds left the Qualified Settlement Fund due to checks being undelivered or not

cashed will be transferred to the State of New Jersey Unclaimed Property

Administration. *Id.*

### C.    Release of Claims

In exchange for this relief, the Settlement Class will release Defendants and

affiliated persons and entities (the "Released Parties") from any and all claims

arising from or in any way related to the allegations and claims in either the

original or First Amended Complaint filed in the Class Action, any and all claims

that could have been asserted by Plaintiffs in the Class Action based upon

information and discovery available to Plaintiffs and their counsel, and any and all

claims (known or unknown) concerning the management or administration of the

Bed Bath & Beyond, Inc. 401(k) Savings Plan at issue in this action, as well as any

claims:

- That would be barred by *res judicata* based on entry of the Final Approval Order;

- That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Qualified Settlement Fund to any Settlement Class Member in accordance with the Plan of Allocation; or

- That relate to the approval by the Independent Fiduciary of the Settlement, unless brought against the Independent Fiduciary alone.[3]

*See id.* § 1.35. The Released Claims do not include claims to enforce the

Settlement Agreement. *Id.*

### D.    Class Notice and Settlement Administrator

Class Members will be sent a direct notice of the settlement ("Settlement

Notice") via first-class U.S. Mail. *Id.* § 2.6 & Ex. A. The Settlement Notice will

include a Rollover Form enabling Settlement Class Members to make the rollover

election described above. *Id.* § 2.6 & Ex. B. The Settlement Administrator will also

establish a Settlement Website on which it will post the First Amended Complaint ,

Settlement Agreement and Exhibits thereto, Settlement Notice, Rollover Form,

Preliminary Approval Order and any other Court orders related to the Settlement,

and Plaintiffs' Motion for Attorneys' Fees and Costs, Administrative Expenses,

and Class Representative Compensation once it is filed. *Id.* § 12.2. Further, the

Settlement Administrator will establish a toll-free telephone line that will provide

---

[3] The Class Representatives, Settlement Class Members and the Plan expressly waive and relinquish, to the fullest extent permitted by law, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which provides that a "general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor," and any similar state, federal or other law, rule or regulation or principle of common law of any domestic governmental entity.

callers the option of speaking with a live operator if they have questions. *Id.* § 12.3.

### E.    Attorneys' Fees, Costs, and Class Representative Compensation

The Settlement Agreement requires that Class Counsel file their motion for attorneys' fees at least 30 days before the date of the Final Fairness Hearing set by the Court. *Id.* § 6.2. As explained in the Settlement Notice, Class Counsel will seek no more than one-third of the Gross Settlement Amount ($650,000) in attorneys' fees. *Id.* § 1.3 & Ex. A. In addition, the Settlement Agreement provides for recovery of Attorneys' Costs, Administrative Expenses, and Class Representative Compensation subject to Court approval. *Id.* § 6.1.

### F.    Review by Independent Fiduciary

As required under ERISA, Defendants will retain an Independent Fiduciary to review and authorize the Settlement on behalf of the Plan. *Id.* § 2.1; *see also* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830. The Independent Fiduciary will issue its report prior to the Final Fairness Hearing so that the Court may consider it. *Id.* §§ 2.1.2, 2.1.6.

## <u>STANDARD OF REVIEW</u>

Rule 23(e) provides that a class action cannot be settled without court approval. Fed. R. Civ. P. 23(e)(2). Approval of a proposed class action settlement generally proceeds in two stages: (1) preliminary approval and notice to class members of the proposed settlement; and (2) a final fairness hearing in which the

Court determines whether the proposed settlement is "fair, reasonable, and adequate." *Id.*

"At the preliminary approval stage, the Court must determine whether it is 'likely to be able to' certify the proposed class, and whether it is 'likely to be able to' approve the terms of the proposed settlement. *Hacker v. Elec. Last Mile Sols. Inc.*, 722 F. Supp. 3d 480, 488 (D.N.J. 2024) (quoting Fed. R. Civ. P. 23(e)(1)(B)(i)). In preliminarily evaluating the terms of the settlement, courts consider whether the settlement is the product of "informed non-collusive negotiations, has any obvious deficiencies, improperly grants preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Basile v. Stream Energy Pennsylvania, LLC*, No. 1:15-CV-01518, 2018 WL 2441363, at *2 (M.D. Pa. May 31, 2018) (citation and quotations omitted). In undertaking this review, "the Court should be careful not to substitute its image of an ideal settlement for the compromising parties' views." *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 962 F. Supp. 450, 534 (D.N.J. 1997), *aff'd sub nom. In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998). "Thus, the issue is whether the settlement is adequate and reasonable, not whether one could conceive of a better settlement." *Id.*

Approval of a proposed class action settlement is "left to the sound

discretion of the district court." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). In exercising this discretion, courts are mindful of the fact that "[t]he law favors settlement, particularly in class actions . . . where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Corp.*, 55 F.3d 768, 784 (3d Cir. 1995) (citing 2 NEWBERG & CONTE § 11.41, at 11–85 (citing cases)).

## ARGUMENT

### I.    THE SETTLEMENT CLASS SHOULD BE CONDITIONALLY CERTIFIED FOR PURPOSES OF SETTLEMENT.

For purposes of Settlement, the Parties ask the Court to appoint Plaintiffs Harvey, Eichenbaum, and Kuzowsky as Class Representatives, to appoint Plaintiffs' Counsel as Class Counsel, and to certify the proposed Settlement Class, defined in Section II.A above. Certification of a class is appropriate where Plaintiffs demonstrate the four prerequisites of Rule 23(a) and at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23. Classes of participants seeking relief derivatively under 29 U.S.C. § 1132(a)(2) are "paradigmatic examples of claims appropriate for certification" under Rule 23(b)(1). *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) (citation and quotation marks omitted, citing cases). This case is no exception.

## A.    The Proposed Settlement Class Satisfies Rule 23(a)

*Ascertainability:* The Third Circuit requires a class to be ascertainable. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). Here, the Plan's recordkeeper, through Defendants' counsel, will provide to the Settlement Administrator a list of the Plan's participants whose Plan account(s) were reduced in any amount due to the 2023 Market Value Adjustment in the GIA and their available contact information. *See* Settlement Agreement § 2.6.1. The Settlement Class has been ascertained. *Gamache v. Hogue*, 338 F.R.D. 275, 285 (M.D. Ga. 2021) (finding ascertainability "given that ERISA requires Defendants to maintain records of the [Plan's] participants").

*Numerosity:* Numerosity requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The proposed Settlement Class has approximately 2,100 members. Lee Dec. ¶ 3. This satisfies numerosity. *See In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249–50 (3d Cir. 2016).

*Commonality:* Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). Here, there are numerous questions common to the class, making commonality easily satisfied. These questions include (1) whether Defendants were fiduciaries with respect to the Plan and the scope of their

10

fiduciary duties; (2) whether Defendants failed to comply with the ERISA fiduciary standards of prudence in violation of 29 U.S.C. § 1104(a)(1); (3) the proper form of relief; and (4) the proper measure of monetary relief. Courts frequently find common questions like these presented by ERISA satisfy commonality. *See, e.g.*, *Luense v. Konica Minolta Bus. Sols. USA., Inc.*, No. 20cv6827 (EP) (JSA), 2024 WL 2765004, at *4 (D.N.J. May 30, 2024) (common question in ERISA class action includes "whether those investment options were in fact imprudent"); *In re Schering Plough Corp. ERISA Litig.*, No. 03-1204, 2008 WL 4510255, at *4 (D.N.J. Jan. 31, 2008) (common questions in ERISA litigation included "whether defendants were fiduciaries; whether defendants breached their duties to the Plan by failing to conduct an appropriate investigation [and] whether the Plan suffered losses"); *Mehling v. N.Y. Life. Ins. Co.*, 246 F.R.D. 467, 474–75 (E.D. Pa. Oct. 24, 2007) (same).

**Typicality:** Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This inquiry evaluates typicality "in common-sense terms," including whether "the incentives of the plaintiffs are aligned with those of the class." *Luense*, 2024 WL 2765004, at *4 (quoting *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006)).

This requirement is easily satisfied here. Plaintiffs and the Settlement Class

11

were all participants in the Plan, whose individual Plan accounts were adjusted due to the Market Value Adjustment applied to the Plan's interest in the GIA. Plaintiffs' "legal claims, alleging . . . breaches of fiduciary duty, are identical to those of the class [they] seek to represent." *Id*. at *5 (citing *Schering Plough*, 589 F.3d at 599); *see also Stanford v. Foamex L.P.*, 263 F.R.D. 156, 168 (E.D. Pa. 2009); *Douglin v. GreatBanc Tr. Co.*, 115 F. Supp. 3d 404, 410 (S.D.N.Y. 2015) (typicality "plainly satisfied" where plaintiffs and class members were all participants in same ERISA plan).

*Adequacy:* Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor "has two components intended to assure that the absentees' interests are fully pursued" (1) "whether the named plaintiffs' interests are sufficiently aligned with the absentees'" and (2) "the qualifications of the counsel to represent the class." *Mehling*, 246 F.R.D. at 475 (citations and quotations omitted).

Plaintiffs Harvey, Eichenbaum, and Kuzowsky seek appointment as class representatives. All three proposed class representatives aided Plaintiffs' counsel in their investigation, provided documents to Plaintiffs' counsel, participated in the mediation, and were prepared to represent the putative class in litigation, including through discovery and trial, if necessary. Harvey Dec. ¶ 3; Eichenbaum Dec. ¶ 3; Kuzowsky Dec. ¶ 3. They are also aware of no conflicts with the Class and have

represented, and will continue to represent, the Class's interests as they would their own. Harvey Dec. ¶¶ 3, 4; Eichenbaum Dec. ¶¶ 3, 4; Kuzowsky Dec. ¶¶ 3, 4.

Plaintiffs' Counsel is also well-qualified to represent the Class. They possess substantial experience prosecuting ERISA class actions, have prosecuted this action through the investigation, motion practice, and mediation. *See Mehling*, 246 F.R.D. at 475 (considering whether class counsel "(1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant.").

Engstrom Lee attorneys comprise experienced ERISA practitioners and complex litigators who have been appointed as class counsel in more than a dozen ERISA class actions. Lee Dec. ¶¶ 16–17, Ex. 2. They have been recognized as knowledgeable in ERISA and employee benefits and have been invited to speak at industry and bar events on the topic. *Id.* ¶ 17. Morgan & Morgan also have a lengthy history of successfully litigating class actions. Declaration of Marc Edelman ¶ 5. Plaintiffs' counsel are therefore adequate to serve as Class Counsel.

### B.    The Proposed Settlement Class Satisfies Rule 23(b)(1)

In addition to meeting the requirements of Rule 23(a), the proposed class also satisfies Rule 23(b)(1). Under Rule 23(b)(1)(B), a class may be certified if prosecution of separate actions by individual class members would create a risk of:

> adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties

13

to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

"In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held." *Schering Plough*, 589 F.3d at 604 (citing cases); *see also Luense*, 2024 WL 2765004, at *8 (certifying ERISA class action under both (b)(1)(A) and (B), citing cases).

The claims satisfy Rule 23(b)(1)(B) because they are brought derivatively on behalf of the Plan under ERISA, *see* 29 U.S.C. §§ 1109 and 1132(a)(2), and the outcome will necessarily affect the participants in the Plan and the Plan's fiduciaries. *Luense*, 2024 WL 2765004, at *8. Any alleged "breaches of fiduciary duty on the part of defendants . . . will, if true, be the same with respect to every class member". *Id.* (quoting *Schering Plough*, 589 F.3d at 604–05). Plaintiffs' claims "are based on defendants' conduct, not . . . on unique facts and individual relationships" and Plaintiffs' "proof[] regarding defendants' conduct will, as a practical matter, significantly impact the claims of other Plan participants." *Schering Plough*, 589 F.3d at 604; *see also, e.g., Boley v. Univ. Health Servs., Inc.*, 337 F.R.D. 626, 639 (E.D. Pa. 2021), *aff'd*, 36 F.4th 124 (3d Cir. 2022) (finding certification of ERISA class action under Rule 23(b)(1)(B) "clearly" satisfied); *Stanford*, 263 F.R.D. at 156 (certifying under 23(b)(1)(B) because "a participant's

14

individual account is still a part of the [p]lan, and, therefore, an adjudication as to the [p]lan will likewise impact a participant's individual accounts"); *Clark v. Duke U.*, No. 1:16-cv-1044, 2018 WL 1801946, at *9 (M.D.N.C. Apr. 13, 2018) (certifying under Rule 23(b)(1)(B) "because the claims concern the same actions in managing the [p]lan and because damages are owed to the [p]lan as a whole and not individual plaintiffs").

## II.    THE SETTLEMENT SATISFIES RULE 23(E)(2).

### A.    Legal Standard

In tandem with the requirements of Rule 23(e)(2), *supra* 7–8, courts in the Third Circuit consider additional factors set forth in *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975). These include "(1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation."[4] *In re Gen. Motors Corp.*

---

[4] Because the class has not yet received notice of the settlement, Plaintiffs will not discuss the class's reaction to the settlement. *See Hacker*, 722 F. Supp. 3d at 499.

*Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 785 (quoting *Girsh*, 521 F.2d at 157).

Further, the Third Circuit has identified additional factors that should be considered where applicable:

> the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d at 324.[5]

Because many *Girsh* and *Prudential* factors overlap with those of Rule 23(e)(2), Plaintiffs address these factors together.

---

[5] Plaintiffs address only those *Prudential* factors that are applicable: "whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable." 148 F.3d at 324.

**B.    The Class Representatives and Class Counsel Have Adequately Represented the Class and Will Continue to do So.**

For the same reasons that the proposed Class Representatives and Plaintiffs' Counsel satisfy the adequacy of representation requirements under Rule 23(a)(4), they also satisfy Rule 23(e)(2)(A). The proposed Class Representatives have been actively engaged in the litigation, have no conflicts with the Class, and seek no individual relief. *See supra* at 12–13. And as detailed above, Plaintiffs' counsel is well-qualified, has extensive experience litigating ERISA class actions, and has worked diligently to litigate the claims here. *See supra* at 13.

**C.    The Settlement was Negotiated at Arm's Length by Experienced Counsel and Facilitated by an Experienced Mediator.**

Rule 23(e)(2)(B) requires the court to determine whether a proposed settlement "was negotiated at arm's length." The Settlement was preceded by a thorough investigation and motion practice. *See supra* at 3. Counsel on both sides are experienced in ERISA and had a clear understanding of the strengths and weaknesses of each party's case. Armed with this understanding, the Parties entered court-ordered settlement negotiations facilitated by experienced mediator, Judge Mark Falk (Ret.). Lee Dec. ¶ 12. These circumstances support the conclusion that the Agreement was negotiated at arm's length. *See Mehling*, 246 F.R.D. at 473 (finding this factor satisfied where settlement was negotiated by a mediator); *Pfeifer*, 2018 WL 2057466, at *6 (same); *Gates v. Rohm & Haas Co.*,

17

248 F.R.D. 434, 444 (E.D. Pa. 2008) (same).

> **D.**    **The Relief is Adequate and Satisfies All Relevant *Girsh* and *Prudential* Factors.**

> **1.** *Complexity and duration of the litigation (*Girsh *Factor 1)*

The first *Girsh* factor "is intended to capture the probable cost, in both time and money, of continued litigation." *McGowan v. CFG Health Network, LLC*, No. 322CV02770ZNQRLS, 2024 WL 1340329, at *8 (D.N.J. Mar. 28, 2024) (citation and quotations omitted). "Where the complexity, expense and likely duration of litigation are significant, the Court will view this factor as weighing in favor of settlement." *Lenahan v. Sears, Roebuck & Co.*, No. 02-0045, 2006 WL 2085282, at *12 (D.N.J. July 10, 2006).

ERISA class actions are "notoriously complex cases," often requiring multiple experts for liability and damages, multiple motions for summary judgment, and "often leading to lengthy litigation." *Foster v. Adams & Assocs., Inc.*, 2021 WL 4924849, at *6 (N.D. Cal. Oct. 21, 2021) (first quotation); *Krueger v. Ameriprise Fin., Inc.*, No. 11–CV–02781 (SRN/JSM), 2015 WL 4246879, at *1 (D. Minn. July 13, 2015) (second quotation). Indeed, these cases can extend for a decade before final resolution, sometimes going through multiple appeals. *See e.g.*, *Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016) (affirming judgment following bench trial held in 2012 for a case filed in 2009); *Fuller v. SunTrust Banks, Inc.*, No. 1:11-cv-00784, Dkt. 295-1 at 10–11 (N.D. Ga. June 5, 2020) (recounting

18

lengthy procedural history of ERISA class action, including "denial of the administrative claim, the appeal of that claim, dismissal of two of the constituent cases, and one unsuccessful appeal to the Eleventh Circuit."); *Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) (recounting 11-year procedural history and remanding to district court a second time); *Tibble v. Edison Int'l*, No. CV 07-5359 SVW (AGRx), 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed in 2007). The Settlement avoids lengthy and costly litigation and provides immediate relief to the Settlement Class and therefore counsels in favor of preliminary approval.

### 2. *Stage of litigation (*Girsh *Factor 3)*

By the time the Parties entered court-ordered mediation, Plaintiffs had conducted a thorough investigation and received preliminary discovery. The Parties had fully briefed Defendants' motion to dismiss. *Supra* at 3. Even where a settlement is reached early, courts give "considerable weight to the views of experienced counsel regarding the merits of the settlement." *Esslinger v. HSBC Bank Nevada*, No. 10-3213, 2012 WL 5866074, at *8 (E.D. Pa. Nov. 20, 2012) (quoting *McAlarnen v. Swift Transp. Co., Inc.*, Civ. A. No. 09–1737, 2010 WL 365823, at *8 (E.D. Pa. Jan.29, 2010)). Counsel for Plaintiff have litigated numerous ERISA class actions, settling many while taking others to trial. Lee Dec. ¶ 16. Accordingly, Plaintiffs' Counsel is intimately familiar with Plan fiduciaries'

responsibilities under ERISA. Similarly, Defendants' counsel has extensive experience with ERISA and the documents underlying Plaintiffs' investigation, which allowed the Parties to fully and fairly assess the allegations and strengths and weaknesses of their respective positions at an early stage, to the benefit of the Class. This weighs in favor of approval. *See In re Gen. Instrument Sec. Litig.*, 209 F.Supp.2d 423, 431 (E.D. Pa. 2001) ("Significant weight should be attributed to the belief of experienced counsel that the settlement is in the best interests of the class."). This factor therefore augurs in favor of preliminary approval.

### 3. *Risks of establishing liability and damages (*Girsh *Factors 4 and 5)*

"The risk of establishing damages is often considered in conjunction with the risk of establishing liability." *Esslinger*, 2012 WL 5866074, at *9 (citing *Lenahan*, 2006 WL 2085282, at *14). Generally, "the more risks that Plaintiffs may face during litigation the stronger this factor favors approving a settlement." *Id.* In evaluating risks, the court may "give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action." *Id.*

This case presented a novel claim under ERISA concerning the monitoring of the GIA as the Plan's capital preservation option in light of BBB's financial struggles. Plaintiffs' counsel is unaware of any court order regarding the prudent

monitoring of a plan's capital preservation option under similar circumstances. Thus, Plaintiffs faced great uncertainty as to the success of this claim, even at the pleading stage. Indeed, the Parties hotly contested the plausibility that Defendants could have anticipated BBB's financial health and the downturn in the bond market that caused the negative Market Value Adjustment. *See* Dkt. 34-1 at 12–16. Even if Plaintiffs could prove liability, there was the risk that depending on when the Court were to find that Defendants should have prudently removed the GIA, Plaintiffs' losses would be wiped out due to gains in the GIA experienced after that time. *See id.* at 16–17.

While Plaintiffs were confident in their ability to overcome these defenses, it would have required significant investment in experts. These risks weigh in favor of approval of the settlement. *See Esslinger*, 2012 WL 5866074, at *9 (finding this factor satisfied where defendants asserted "it would vigorously challenge Plaintiffs' ability to show a causal nexus between [] alleged wrongdoing and losses sustained by Class members."); *Lenahan*, 2006 WL 2085282, at *15 ("In addition to defenses to liability, Plaintiffs would have to overcome any defenses regarding damages that Defendants would assert."). Indeed, the risk of little to no recovery is ever present in complex litigation, including in ERISA class actions. *See, e.g.*, *Pledger v. Reliance Tr. Co.*, No. 1:15-CV-4444-MHC, 2019 WL 10886802, at *24–25 (N.D. Ga. Mar. 28, 2019) (granting summary judgment in defendants'

21

favor on ERISA claim involving claims of breach of the duty of prudence); *Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1134-35 (D. Colo. 2020) (judgment awarding only a fraction of the damages sought in ERISA class action after bench trial); *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 108-09 (D. Mass. 2010) (ERISA claim value reduced 5x by adverse pre-trial orders). Given the risks Plaintiffs faced with a novel legal claim, this factor favors preliminary approval.

### 4.  *Risks of maintaining a class action (*Girsh *Factor 6)*

Given the derivative nature of ERISA class actions, this factor is neutral, as there was minimal risk that this action could not have been maintained as a class action. *See supra* at 14.

### 5.  *Ability of Defendants to withstand a greater judgment (*Girsh *Factor 7)*

This factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *McGowan*, 2024 WL 1340329, at *10. This factor is relevant only when "the defendant's professed inability to pay is used to justify the amount of the settlement," which is not the case here. *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 440 (3d Cir. 2016), *as amended* (May 2, 2016). "[T]he fact that [defendant] could afford to pay more does not mean that it is obligated to pay any more than what the ... class members are entitled to under the theories of liability that existed at the time the settlement was reached." *In re Warfarin*, 391 F.3d at 538. "Indeed, courts in this

district regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts." *McGowan*, 2024 WL 1340329, at *10 (citing cases).

### 6. *Range of reasonableness of the settlement in light of the best recovery and attendant risks of litigation (*Girsh *Factors 8 and 9)*

These factors examine 'whether the settlement represents a good value for a weak case or a poor value for a strong case.'" *Lenahan*, 2006 WL 2085282, at *15 (citing *Warfarin*, 391 F.3d at 538). "[I]n conducting the analysis, the court must guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Esslinger*, 2012 WL 5866074, at *10 (quoting *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3d Cir. 2011)).

As Plaintiffs allege, participants' individual accounts were adjusted due to the Market Value Adjustment applied to the Plan's investment in the GIA after BBB resolved to terminate the Plan. The total Market Value Adjustment was $6,575,624. Settlement Agreement § 1.24. The Settlement therefore represents approximately 30% of the total Market Value Adjustment, which falls well within the range of acceptable recoveries, especially in light of the early stage of the litigation. *See* Lee Dec. ¶ 13; *Lenahan*, 2006 WL 2085282, at *16 (overruling objection that settlement amounted to only 14% of estimated damages, explaining "[i]t is well-settled law that a cash settlement amounting to only a fraction of the

23

potential recovery will not per se render the settlement inadequate or unfair"); *see also Strube v. Amer. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (2% recovery adequate); *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 628 (9th Cir.1982) ("there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery"). Considering the substantial recovery in light of the substantial risk of no recovery, this factor supports preliminary approval.

### 7. *Relevant* **Prudential** *Factors*

***Procedure for processing individual claims***. Rule 23(e)(2)(C)(ii) and *Prudential* examine the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims. As noted above, Class Members will have the option to receive their Settlement distribution in the form of a rollover to another qualified retirement account. Lee Dec. ¶ 8. Class Members who do not request a rollover will automatically receive a direct distribution without the need to submit a claim. *Id.* This method of distribution minimizes barriers to receiving settlement distributions, potentially avoids negative tax consequences for Class Members, and is in line with numerous other ERISA class action settlements that have received court approval. *See, e.g.*, *Nesbeth v. ICON Clinical Rsch. LLC*, No. CV 21-1444, 2022 WL 22893879, at *4 (E.D. Pa.

Mar. 10, 2022) (approving similar claims method in ERISA class action); *Stevens v. SEI Invs. Co.*, No. 18-4205, 2020 WL996418, at *6 (E.D. Pa. Feb. 28, 2020) (same).

***Reasonableness of provisions for attorneys' fees***. Rule 23(e)(2)(C)(iii) and *Prudential* look at the terms of any proposed award of attorneys' fees, including timing of payment. As described *supra* in Section II.E, Plaintiffs' Counsel will file an application seeking an award of attorneys' fees in an amount not exceeding $650,000 (one-third of the Gross Settlement Amount), plus reimbursement of litigation costs. Settlement Agreement § 6.1.

In the Third Circuit, awards in common fund cases "generally range anywhere from nineteen percent (19%) to forty-five percent (45%) of the settlement fund." *McGowan*, 2024 WL 1340329, at *14. Accordingly, the requested one-third fee is common in the Third Circuit. *See, e.g.*, *Beltran v. Sos Ltd.*, No. CV 21-7454 (RBK/EAP), 2023 WL 319895, at *8 (D.N.J. Jan. 3, 2023), *report and recommendation adopted*, No. CV 21-7454 (RBK/EAP), 2023 WL 316294 (D.N.J. Jan. 19, 2023) (awarding one-third fee award).[6] It is also typical of fee awards in ERISA class actions such as this. *See, e.g.*, *Stevens*, 2020 WL

---

[6] *See also In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-md-2687 (JLL)(JAD), 2018 WL 7108059, at *1 (D.N.J. Dec. 3, 2018) (same); *In re Merck & Co., Inc., Vytorin ERISA Litig.*, No. 08-cv-285 (DMC), 2010 WL 547613, at *9–*11 (D.N.J. Feb. 9, 2010) (same); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 107 (D.N.J. 2001) (same).

996418, at *13 (overruling objection and approving one-third fee award in ERISA class action, citing cases).[7] Plaintiffs' counsel will also seek reimbursement of costs and expenses they have advanced on behalf of the Class. Settlement Agreement § 6.1. This amount is approximately $2,000 to date, and additional expenses are not expected to be material. Lee Dec. ¶ 5.

*Ability for class members to opt out.* Under Rule 23(b)(1), class members cannot opt out of the class. However, that is not a bar to approval, especially considering the proposed "robust notice" plan and the "opportunity to file objections." *See Stevens*, 2020 WL 996418, at *6 (finding this factor did not disfavor approval where ERISA class was certified under Rule 23(b)(1)); *Pfeifer*, 2018 WL 4203880, at *11 (same).

### E. The Settlement Treats Class Members Equitably Relative to Each Other.

Under Rule 23(e)(2)(D), the Court must consider whether the proposal treats class members equitably relative to each other. As noted in Section II.B, the

---

[7] *See also Roubert v. Cap. One Fin. Corp.*, 2023 WL 5916714, at *9 (M.D. Fla. July 10, 2023) *report and recommendation adopted*, 2023 WL 5320195 (M.D. Fla. Aug. 18, 2023) (same); *Henderson v. Emory Univ.*, No. 16-2920-CAP, Dkt. 236 (N.D. Ga. Nov. 4, 2020) (same); *Kruger v. Novant Health*, No. 11–CV–02781 (SRN/JSM), 2016 WL 6769066, at *2 (M.D.N.C. Sept. 29, 2016) (same); *Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 WL 757123, at *7 (S.D. Ohio Feb. 18, 2021) (same); *Sims v. BB&T Corp.*, Nos. 1:15-CV-732, 1:15-CV-841, 2019 WL 1995314, at *2 (M.D.N.C. May 6, 2019) (same); *Clark v. Oasis Outsourcing Holdings Inc.*, No. 18-81101, Dkt. 23 at ¶ 1 (S.D. Fla. Dec. 20, 2018) (same).

26

Settlement proceeds will be distributed to Class Members on a *pro rata* basis based on a common allocation formula. *See* Settlement Agreement § 5.1. According to that process, individual Class Members will receive *pro rata* distributions based on each Class Member's percentage of the Market Value Adjustment applied to their individual Plan account. Courts in this Circuit and elsewhere have found such *pro rata* distributions appropriate. *Nesbeth*, 2022 WL 22893879, at *4; *Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 770 (D. Md. 2022); *McWhorter v. Ocwen Loan Servicing*, No. 2:15-CV-01831-MHH, 2019 WL 9171207, at *12 (N.D. Ala. Aug. 1, 2019).

## III. THE COURT SHOULD APPROVE THE NOTICE PLAN AND SCHEDULE A FAIRNESS HEARING

In addition to reviewing the substance of the proposed Settlement, the Court must ensure that notice is sent in a reasonable manner to all Class Members who would be bound by the Settlement. *See* Fed. R. Civ. P. 23(e)(1). The "best notice practicable" under Rule 23 specifically includes "individual notice to all [class] members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice proposed here.

The Settlement Agreement provides that the Settlement Administrator will provide direct notice of the Settlement to the Settlement Class via first-class mail. *See* Settlement Agreement § 2.6. This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The content of the

27

Notice is also reasonable. The Notice includes information regarding: (1) the nature of the claims; (2) the scope of the Settlement Class; (3) the terms of the Settlement; (4) the process for receiving distributions; (5) Class Members' right to object to the Settlement and the deadline for doing so; (6) the class release; (7) the identity of Class Counsel and the compensation they will seek; (8) the date, time, and location of the Fairness Hearing; and (9) Class Members' right to appear at the final approval hearing. Settlement Agreement, Ex. A.

If Class Members would like further information, the Settlement Notice will be supplemented through a website and telephone support line. Settlement Agreement §§ 12.2, 12.3. This further supports approval of the notice program. *See Mehling*, 246 F.R.D. at 477–78 (approving similar notice plan for ERISA class action, noting "notice must inform class members of (1) the nature of the litigation; (2) the settlement's general terms; (3) where complete information can be located; and (4) the time and place of the fairness hearing and that objectors maybe heard."); *Pfeifer*, 2018 WL 2057466, at *6–7 (same).

Finally, Plaintiffs request that the Court schedule a Fairness Hearing on Plaintiffs' motion for final approval of the Settlement and motion of an award of Attorneys' Fees and Costs, Administrative Expenses, and Class Representative Compensation, as set forth in the proposed Preliminary Approval Order. This will establish a reasonable and efficient process for disseminating notice, providing the

opportunity for Settlement Class Members to object, and considering final approval of the Settlement.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the Settlement Class, preliminarily approve the Settlement, and enter the accompanying proposed order.

Date: February 14, 2025              **MORGAN & MORGAN, P.A.**

/s/Andrew R. Frisch
Andrew R. Frisch, NJ Bar No. 038452000
8151 Peters Road, Suite 4000
Plantation, FL 33324
Telephone: (954) 967-5377
Facsimile: (954) 327-3013
afrisch@forthepeople.com

Marc R. Edelman, FL Bar No. 0096342*
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 257-0572
medelman@forthepeople.com

**ENGSTROM LEE LLC**
Carl F. Engstrom, MN Bar No. 0396298*
Jennifer K. Lee, MN Bar No. 0399012*
323 Washington Ave. N., Suite 200
Minneapolis, MN 55401
Telephone: (612) 305-8349
Facsimile: (612) 677-3050
cengstrom@engstromlee.com
jlee@engstromlee.com

29

**WENZEL FENTON CABASSA P.A.**
Brandon J. Hill, FL Bar No. 0037061*
1110 N. Florida Ave., Suite 300
Tampa, FL 33602
Telephone: (813) 224-0431
Facsimile: (813) 229-8712
bhill@wfclaw.com

*Admitted *pro hac vice*

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on February 14, 2025, the foregoing was electronically filed using the CM/ECF system, causing a Notice of Electronic Filing to be transmitted to all counsel of record.

/s/Andrew R. Frisch

Andrew R. Frisch
