# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PAUL HARVEY, MERYL EICHENBAUM, and ROXANNE KUZOWSKY, as representatives of a class of similarly situated persons, and on behalf of the BED BATH & BEYOND, INC. 401(K) SAVINGS PLAN,<br><br>     Plaintiffs,<br><br>v.<br><br>BED BATH & BEYOND, INC. 401(K) SAVINGS PLAN COMMITTEE and LAURA CROSSEN,<br><br>     Defendants. | Case No. 2:23-cv-20376-CCC-SDA |

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION <u>SETTLEMENT</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................. III

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND................................................................................ 2

   I.   PROCEDURAL HISTORY ........................................................................ 2

   II.   SETTLEMENT TERMS AND PRELIMINARY APPROVAL ................ 3

   III.  CLASS NOTICE AND REACTION TO SETTLEMENT ......................... 4

   IV.  REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY ........... 5

ARGUMENT....................................................................................................... 6

   I.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE
       SETTLEMENT.................................................................................... 6

      A.   The Settlement Satisfies Rule 23(e)(2). .............................................. 6

      B.   The Class Representatives and Class Counsel Have Adequately
          Represented the Class and Will Continue to do So............................. 7

      C.   The Settlement was Negotiated at Arm's Length by Experienced
          Counsel and Facilitated by an Experienced Mediator......................... 8

      D.   The Relief is Adequate....................................................................... 9

          1.   The Complexity, Expense, and Likely Duration of the Litigation
              (*Girsh* factor 1)............................................................................ 9

          2.   The Reaction of the Class to the Settlement (*Girsh* factor 2)....... 9

          3.   The Stage of the Proceedings and the Amount of Discovery
              Completed (*Girsh* factor 3). ...................................................... 10

          4.   The High Risks of Achieving a Successful Trial Result (*Girsh*
              Factors 4, 5, and 6). .................................................................... 11

5.      Ability of Defendants to Withstand a Greater Judgment (Girsh factor 7). ..................................................................... 14

6.      Range of reasonableness of the settlement in light of the best recovery and risks of litigation (*Girsh* Factors 8, 9). ................. 14

7.      Relevant *Prudential* Factors. ....................................................... 16

E.      The Settlement Treats Class Members Equitably. ............................. 18

II.     THE SETTLEMENT CLASS NOTICE WAS REASONABLE.............. 19

III.    THE CERTIFICATION OF THE SETTLEMENT CLASS SHOULD BE REAFFIRMED. ....................................................................... 20

CONCLUSION................................................................................ 21

CERTIFICATE OF SERVICE ............................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Beltran v. Sos Ltd.*,
   2023 WL 319895 (D.N.J. Jan. 3, 2023) ............................................................. 17

*Clark v. Oasis Outsourcing Holdings Inc.*,
   No. 18-81101, Dkt. 23 (S.D. Fla. Dec. 20, 2018) ............................................. 18

*Esslinger v. HSBC Bank Nevada, N.A.*,
   2012 WL 5866074 ........................................................................................ 13, 15

*Feinberg v. T. Rowe Price Grp., Inc.*,
   610 F. Supp. 3d 758 (D. Md. 2022) ................................................................... 19

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) ................................................................................. 6

*Henderson v. Emory Univ.*,
   No. 16-2920-CAP, Dkt. 236 (N.D. Ga. Nov. 4, 2020) ....................................... 18

*Hochstadt v. Bos. Sci. Corp.*,
   708 F. Supp. 2d 95 (D. Mass. 2010) .................................................................. 13

*In re Baby Prods. Antitrust Litig.*,
   708 F.3d 163 (3d Cir. 2013) ............................................................................... 20

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ............................................................................... 12

*In re Delphi Corp.*,
   248 F.R.D. 483 (E.D. Mich. 2008) ..................................................................... 12

*In re Flonase*,
   951 F. Supp. 2d 739 (E.D. Pa. 2013) ................................................................. 11

*In re Gen. Motors Corp.*,
   55 F.3d 768, 785 (3d Cir. 1995) ............................................................... 6, 10, 12

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
   2018 WL 7108059 (D.N.J. Dec. 3, 2018) ........................................................... 17

*In re Merck & Co., Inc., Vytorin ERISA Litig.*,
   2010 WL 547613 (D.N.J. Feb. 9, 2010) ............................................................. 17

*In re NJ Tax Sales Certificates Antitrust Litig.*,
   750 F. App'x 73, 77 (3d Cir. 2018) .................................................................... 7

*In re Phila. Inquirer*,
   2025 WL 845118 (E.D. Pa. Mar. 18, 2025) ...................................................... 11

*In re Prudential Ins.*,
   148 F.3d 283 (3d Cir. 1998) ................................................................... *passim*

*In re Safety Components, Inc. Sec. Litig.*,
   166 F. Supp. 2d 72 (D.N.J. 2001) ..................................................................... 17

*In re Schering Plough Corp.*,
   589 F.3d 585 (3d Cir. 2009) ............................................................................. 21

*In re Warfarin*,
   391 F.3d at 516 (3d Cir. 2004) ............................................................. 9, 10, 14

*Karpik v. Huntington Bancshares Inc.*,
   WL 757123 (S.D. Ohio Feb. 18, 2021) ............................................................. 18

*Kruger v. Novant Health*,
   2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ................................................. 18

*Lenahan v. Sears, Roebuck & Co.*,
   2006 WL 2085282 .................................................................................... 13, 15

*Mack Trucks, Inc. v. UAW*,
   2011 WL 4402136 (E.D. Pa. Sept. 22, 2011) ................................................... 19

*McGowan v. CFG Health Network, LLC*,
   2024 WL 1340329 (D.N,J. Mar. 28, 2024) .................................................. 14, 17

*McWhorter v. Ocwen Loan Servicing*,
  2019 WL 9171207 (N.D. Ala. Aug. 1, 2019) ...................................................... 19

*Mehling v. N.Y. Life Ins. Co.*,
  246 F.R.D. 467 (E.D. Pa. 2007) ........................................................................ 8

*Mirakay v. Dakota Growers Pasta Co.*,
  2014 WL 5358987 (D.N.J. Oct. 20, 2014) ......................................................... 20

*Nesbeth v. ICON Clinical Rsch. LLC*,
  2022 WL 22893879 (E.D. Pa. Mar. 10, 2022) ............................................. 16, 19

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir.1982) ............................................................................. 15

*Pfeifer v. Wawa, Inc.*,
  2018 WL 2057466 (E.D. Pa. May 1, 2018) ........................................................ 8

*Pfeifer v. Wawa, Inc.*,
  2018 WL 4203880 (E.D. Pa. Aug. 31, 2018) ................................................. 8, 18

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ......................................................................................... 19

*Pledger v. Reliance Tr. Co.*,
  2019 WL 10886802 (N.D. Ga. Mar. 28, 2019) .................................................. 13

*Ramos v. Banner Health*,
  461 F. Supp. 3d 1067 (D. Colo. 2020) ............................................................. 13

*Ripley v. Sunoco, Inc.*,
  287 F.R.D. 300 (E.D. Pa. 2012) ....................................................................... 11

*Roubert v. Cap. One Fin. Corp.*,
  2023 WL 5916714 (M.D. Fla. July 10, 2023) .................................................... 18

*Silvis v. Ambit Energy L.P.*,
  326 F.R.D. 419 (E.D. Pa. 2018) ....................................................................... 11

*Sims v. BB&T Corp.*,
  2019 WL 1995314 (M.D.N.C. May 6, 2019) ...................................................... 18

*Stevens v. SEI Invs. Co.*,
  2020 WL 996418 (E.D. Pa. Feb. 28, 2020) ................................................... *passim*

*Strube v. Amer. Equity Inv. Life Ins. Co.*,
  226 F.R.D. 688 (M.D. Fla. 2005) ....................................................................... 15

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
  2020 WL 1922902 (E.D. Pa. Apr. 21, 2020) ....................................................... 9

*Wallace v. Powell*,
  301 F.R.D. 144 (M.D. Pa. 2014) ................................................................... 9, 10

**Statutes**
Fed. R. Civ. P. 23 ............................................................................................... *passim*

## INTRODUCTION

Plaintiffs Paul Harvey, Meryl Eichenbaum, and Roxanne Kuzowsky submit this Memorandum in support of their Motion for Final Approval of Class Action Settlement ("Settlement") with Bed Bath & Beyond, Inc. 401(k) Savings Plan Committee and Laura Crossen ("Defendants") regarding their monitoring of the MassMutual Guaranteed Investment Account ("GIA") investment option in the Bed Bath & Beyond, Inc. 401(k) Savings Plan ("Plan"). On May 9, 2025, the Court preliminarily approved the Settlement, which provides for a Gross Settlement Amount of $1,950,000 and prospective relief to resolve the claims of the Settlement Class. Dkt. 62. The Court found on a preliminary basis that:

> (1) the Settlement is fair, reasonable, and adequate, and within the range of possible approval; (2) the Settlement has been negotiated in good-faith at arms-length between experienced attorneys familiar with the legal and factual issues of this case and facilitated by an experienced mediator following substantial discovery; (3) the form and method of notice of the Settlement of the Final Fairness Hearing is appropriate; and (4) the Settlement meets all applicable requirements of law, including Federal Rule of Civil Procedure 23 and applicable Third Circuit precedents.

*Id.* ¶ 1. The Court approved the distribution of the Notice of Settlement as specified in the Settlement Agreement. *Id.* ¶ 5. Since that time, an Independent Fiduciary has confirmed that the Settlement terms are reasonable, *see* Declaration of Jennifer K. Lee in Support of Final Approval ("Third Lee Dec."), Ex. A ("IF Report"), and the response from the Class has been favorable, Declaration of

1

Richard Simmons ("Simmons Dec.") ¶¶ 3, 5. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement. As parties to the Settlement, Defendants do not oppose the relief sought in this motion.

<u>**FACTUAL BACKGROUND**</u>

## I.    PROCEDURAL HISTORY

On September 14, 2023, Plaintiffs commenced this action. Dkt. 1. They alleged that Defendants breached their fiduciary duties by causing the Plan to retain the GIA as the Plan's low-risk capital preservation option, even while the risk that the GIA could lead participants to suffer large negative losses increased. In April 2023 BBB declared bankruptcy and the Plan was later resolved to be terminated. *Id.* ¶ 28. That termination triggered a large negative market value adjustment to be applied to the Plan's investment in the GIA. *Id.*

Defendants moved to dismiss the Complaint on December 12, 2024. Dkt. 24. In response, Plaintiffs amended their Complaint to add additional allegations regarding the foreseeability of BBB's bankruptcy and the GIA market value adjustment. Dkt. 24. Defendants then moved to dismiss the First Amended Complaint. Briefing on that motion was complete on March 12, 2024. Dkt. 37, 40. During this process the Parties exchanged preliminary discovery. *See, e.g.*, Dkt. 41.

While Defendants' motion to dismiss the First Amended Complaint was pending, the Court ordered the Parties to mediate with Judge Mark Falk (Ret.).

Dkt. 49. On October 29, 2024 the Parties engaged in a mediation session with Judge Falk. Dkt. 52. That mediation was unsuccessful but ended with a mediator's proposal. *Id.* On December 2, 2024 the Parties held a second mediation and reached the Settlement that is the subject of this motion. Dkt. 55.

## II.    SETTLEMENT TERMS AND PRELIMINARY APPROVAL

Under the Settlement, Defendants will contribute a Gross Settlement Amount of $1,950,000 to resolve the Settlement Class Members' claims. Dkt. 61-1 ("Settlement") § 1.22. After accounting for any Attorneys' Fees and Costs, Administrative Expenses, and Class Representative Compensation approved by the Court, the Net Settlement Amount will be distributed to Class Members in accordance with the Plan of Allocation in the Settlement. *Id.* §§ 1.26, 5.1.

The Plan of Allocation requires the appointed Settlement Administrator, Analytics Consulting LLC ("Analytics"), to calculate a Settlement Credit Amount for each Settlement Class Member. *Id.* §5.1. For purposes of making this determination, the Settlement Allocation Score will be equal to the Net Settlement Amount multiplied by the percentage of the Market Value Adjustment charged to the Plan account(s) of that Class Member. *Id.*

Class Members may elect to have their share of the Net Settlement Amount rolled over into an individual retirement account or other eligible employer plan by submitting a Rollover Form. *Id.* §§ 5.4. Any such Class Members who do not

submit a Rollover Form will automatically receive their share via check. *Id.*

§ 5.4.3. Under no circumstances will any monies revert to Defendants. *Id.* § 5.5.3.

Funds left the Qualified Settlement Fund due to checks being undelivered or not

cashed will be transferred to the State of New Jersey Unclaimed Property

Administration. *Id.*

On February 14, 2025, Plaintiffs moved for preliminary approval of the

Settlement. Dkt. 60. On May 9, 2025, the Court granted preliminary approval of

the Settlement.  Dkt. 62. On August 19, 2025, Plaintiffs moved for an award of

Attorneys' Fees, Costs, and Administrative Expenses. Dkt. 63. A Final Fairness

Hearing is set for October 9, 2025. Dkt. 62.

## III.    CLASS NOTICE AND REACTION TO SETTLEMENT

Settlement Class Members were sent direct notice ("Notice") of the

Settlement via first-class U.S. Mail. Settlement § 2.6 & Ex. A. The Notice included

a Rollover Form to make the rollover election described above. *Id.* § 2.6 & Ex. B.

Prior to sending these Notices, Analytics cross-referenced Class Members' last

known addresses with the United States Postal Service National Change of

Address ("NCOA") Database. Simmons Dec. ¶ 3. For any Settlement Notices that

were returned, Analytics performed a skip trace in an attempt to ascertain a valid

address for the Class Member in the absence of a forwarding address. *Id.* As a

result, the notice program was very effective. Out of 2,107 Settlement Notices that

were mailed, only 18 were ultimately undeliverable despite these efforts. *Id*.

Analytics also established a Settlement Website hosting the Complaint, Settlement Agreement and Exhibits, Notice, Rollover Form, Preliminary Approval Order, Plaintiffs' Motion for Attorneys' Fees and Costs, Administrative Expenses, and Class Representative Compensation, and any other Court orders related to the Settlement. *Id*. ¶ 4. It also established a toll-free telephone line with a live operator who can answer questions. *Id*. Since mailing notices, Analytics has received 52 emails, 175 phone calls, and 88 rollover forms. *Id*. ¶ 5. It has not received any objections to the Settlement. *Id*.

## IV.    REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY

Pursuant to Paragraph 2.1 of the Settlement and applicable ERISA regulations,[1] the Settlement was submitted to an Independent Fiduciary (Gallagher Fiduciary Advisors, LLC) for review following the Court's preliminary approval order. After reviewing the Settlement and other case documents, and interviewing counsel for each of the Parties, the Independent Fiduciary "approves and authorizes the settlement of the Litigation and the release of the Plan's claims as set forth in the Settlement Agreement." IF Report. The Independent Fiduciary "determined that the settlement as set forth in the Settlement Agreement meets the

---

[1] *See* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830.

requirements of ERISA Prohibited Transaction Class Exemption 2003-39, as amended." *Id.*

## ARGUMENT

### I.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT.

#### A.    The Settlement Satisfies Rule 23(e)(2).

A class action cannot be settled without court approval. Fed. R. Civ. P. 23(e)(2). Approval of a proposed class action settlement proceeds in two stages: (1) preliminary approval and notice to class members of the proposed settlement; and (2) a final fairness hearing in which the Court determines whether the proposed settlement is "fair, reasonable, and adequate." *Id.*

In tandem with the requirements of Rule 23(e)(2), courts in the Third Circuit consider additional factors set forth in *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975). These include "(1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation." *In re Gen. Motors Corp.*, 55 F.3d 768, 785 (3d Cir. 1995) (quoting *Girsh*, 521 F.2d at 157). Further, the Third Circuit has identified

additional factors that should be considered:

> the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, . . . the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; . . . the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants; . . . whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Prudential Ins.*, 148 F.3d 283, 324 (3d Cir. 1998).[2] "A court may approve a settlement even if it does not find that each of these factors weighs in favor of approval." *In re NJ Tax Sales Certificates Antitrust Litig.*, 750 F. App'x 73, 77 (3d Cir. 2018).

### B.     The Class Representatives and Class Counsel Have Adequately Represented the Class and Will Continue to do So.

The appointed Class Representatives, Paul Harvey, Meryl Eichenbaum, and Roxanne Kuzowsky, are and have been adequate class representatives. They have no conflicts with the Class and have represented the Class's interests as they would their own. Dkt. 61-3 ¶ 7; Dkt. 61-4, ¶ 7; Dkt. 61-5 ¶ 7. They have participated throughout this action, assisting Class Counsel in their investigation, producing documents, and being available during the mediation. Dkt. 61-3 ¶ 4; Dkt. 61-4, ¶ 4;

---

[2] Plaintiffs address only applicable *Girsh* and *Prudential* factors and with the Rule 23(e)(2) factors, where appropriate.

Dkt. 61-5 ¶ 4.

Appointed Class Counsel has likewise adequately represented the Class. They invested significant resources in identifying and investigating the novel claim raised in this case. Dkt. 64-1 ¶¶ 3–5. Engstrom Lee attorneys comprise experienced ERISA practitioners and complex litigators who have been appointed as class counsel in more than a dozen ERISA class actions. Dkt. 61-1 ¶ 14. They have ably prosecuted this action through the investigation, motion practice, and mediation. *Id.*

### C. The Settlement was Negotiated at Arm's Length by Experienced Counsel and Facilitated by an Experienced Mediator.

Rule 23(e)(2)(B) requires the court to determine whether a proposed settlement "was negotiated at arm's length." The Settlement was preceded by a thorough investigation and motion practice. Dkt. 61-1 ¶¶ 7. Counsel on both sides are experienced in ERISA litigation and had a clear understanding of the strengths and weaknesses of each party's case. *Id.* Armed with this understanding, the Parties entered settlement negotiations facilitated by experienced mediator, Judge Mark Falk (Ret.). *Id.* ¶ 10. These circumstances support the conclusion that the Agreement was negotiated at arm's length. *See Mehling v. N.Y. Life Ins. Co.*, 246 F.R.D. 467, 473 (E.D. Pa. 2007); *Pfeifer v. Wawa, Inc.*, 2018 WL 2057466, at *6 (E.D. Pa. May 1, 2018).

**D.    The Relief is Adequate.**

**1.  The Complexity, Expense, and Likely Duration of the Litigation (*Girsh* factor 1).**

"The first *Girsh* factor 'captures the probable costs, in both time and money, of continued litigation.'" *Wallace v. Powell*, 301 F.R.D. 144, 160 (M.D. Pa. 2014) (quoting *In re Warfarin*, 391 F.3d 516, 535-36 (3d Cir. 2004)). "It is well-recognized that 'ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation.'" *Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *3 (E.D. Pa. Feb. 28, 2020) (citations omitted). This case is no exception. The Parties held different views about Defendants' actions, Defendants' potential liability, and the likely outcome of this litigation. Plaintiffs alleged that Defendants' retention of the GIA despite signs of Bed Bath and Beyond's worsening financial troubles was imprudent. These fact-intensive inquiries would have led to a battle of experts and conflicting evidence and testimony, which would have created uncertainty as to the ultimate outcome of the litigation. Instead, this Settlement grants immediate recovery to the Settlement Class, eliminating the delay in recovery achieved after a trial and appeal. Thus, the Settlement satisfies the first *Girsh* factor. *See e.g., Vista Healthplan, Inc. v. Cephalon, Inc.*, 2020 WL 1922902, at *17 (E.D. Pa. Apr. 21, 2020).

**2.  The Reaction of the Class to the Settlement (*Girsh* factor 2).**

"The Second *Girsh* factor 'attempts to gauge whether members of the class

support the settlement.'" *Warfarin*, 391 F.3d at 536 (quoting *Prudential*, 148 F.3d at 318). "Courts have generally assumed that 'silence constitutes tacit consent to the agreement.'" *Gen. Motors*, 55 F.3d at 812 (citation omitted). Here, after a successful Notice campaign, no objections were filed as of the filing of this motion. Accordingly, this factor is satisfied.

### 3. The Stage of the Proceedings and the Amount of Discovery Completed (*Girsh* factor 3).

"The third *Girsh* factor 'captures the degree of case development that class counsel had accomplished prior to settlement,' and allows the court to 'determine whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Wallace*, 301 F.R.D. at 161 (quoting *Warfarin*, 391 F.3d at 537). Under this factor, courts "also examine whether the settlement resulted from arm's-length negotiations." *Id.* (citing *In re Corel Corp.*, 293 F. Supp. 2d 484, 491 (E.D. Pa. 2003)). When settlements result from arm's length negotiations, "the court will 'afford[] considerable weight to the views of experienced counsel regarding the merits of the settlement.'" *Id.* (quoting *McAlarnen v. Swift Transp. Co., Inc.*, 2010 WL 365823, at *8 (E.D. Pa. Jan. 29, 2010)).

Although the Parties had yet to commence formal discovery, Class Counsel devoted significant resources to this matter pre-suit. *Supra* at 2. This pre-suit investigation and the subsequent contested motion practice provided Class Counsel with enough information to fairly evaluate the strengths and weaknesses of the

Class's claim. Further, Class Counsel are experienced in the litigation of complex ERISA matters such as this, providing them further perspective on the relative strengths and weaknesses at play. Dkt 61-1 ¶¶ 13, 14. Armed with this information and experience, settlement was obtained following two mediation sessions and a mediator's proposal. *Id.* ¶ 10. So, "although we are 'somewhat early in the litigation process,' class counsel 'have adequately developed their case and engaged in a significant degree of case development.'" *In re Phila. Inquirer*, 2025 WL 845118, at *9 (E.D. Pa. Mar. 18, 2025) (quoting *In re Wawa, Inc.*, 2023 WL 6690705, at *8 (E.D. Pa. Oct. 12, 2023)); *see also Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 312 (E.D. Pa. 2012). This factor favors approval.

### 4. The High Risks of Achieving a Successful Trial Result (*Girsh* Factors 4, 5, and 6).

The fourth, fifth, and sixth *Girsh* factors assess the trial risks of establishing liability, damages, and maintaining class certification. *Silvis v. Ambit Energy L.P.*, 326 F.R.D. 419, 432 (E.D. Pa. 2018). "These factors 'balance the likelihood of success and potential damage award if the case were to trial against the benefits of immediate settlement.'" *Id.* (quoting *Prudential*, 148 F.3d at 319); *see also In re Flonase*, 951 F. Supp. 2d 739, 744 (E.D. Pa. 2013) (noting the fourth and fifth factors are "closely related" and may be addressed together).

Regarding the risks of establishing liability, this factor "examine[s] what the potential rewards (or downside) of litigation might have been had class counsel

elected to litigate the claims rather than settle them." *Gen. Motors*, 55 F.3d at 814. As to damages, this factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant Corp. Litig.*, 264 F.3d 201, 238–39 (3d Cir. 2001) (quoting *Gen. Motors*, 55 F.3d at 816).

Here, the risks assessed under the fourth and fifth *Girsh* factors are high. As discussed, ERISA actions are complex and risky. *Stevens*, 2020 WL 996418, at *3; *see also In re Delphi Corp.*, 248 F.R.D. 483, 496 (E.D. Mich. 2008) (although "risk is inherent in any litigation, particularly class actions … [t]he risk is even more acute in the complex areas of ERISA law"). Here, "the outcome of this matter with respect to liability [was] far from certain." *Stevens*, 2020 WL 996418, at *5. This case presented a novel claim under ERISA concerning the monitoring of the GIA as the Plan's capital preservation option in light of BBB's financial struggles. Plaintiffs' counsel is unaware of any court order regarding the prudent monitoring of a plan's capital preservation option under similar circumstances. Thus, Plaintiffs faced great uncertainty as to the success of this claim, even at the pleading stage. Indeed, the Parties hotly contested the plausibility that Defendants could have anticipated BBB's financial health and the downturn in the bond market that caused the negative Market Value Adjustment. *See* Dkt. 34-1 at 12–16. Even if Plaintiffs could prove liability, there was the risk that depending on when the Court were to find that Defendants should have prudently removed the GIA,

Plaintiffs' losses would be wiped out due to gains in the GIA experienced after that time. *See id.* at 16–17.

While Plaintiffs were confident in their ability to overcome these defenses, it would have required significant investment in experts. These risks weigh in favor of approval of the settlement. *See Esslinger*, 2012 WL 5866074, at *9 (finding this factor satisfied where defendants asserted "it would vigorously challenge Plaintiffs' ability to show a causal nexus between [] alleged wrongdoing and losses sustained by Class members."); *Lenahan*, 2006 WL 2085282, at *15 ("In addition to defenses to liability, Plaintiffs would have to overcome any defenses regarding damages that Defendants would assert."). Indeed, the risk of little to no recovery is ever present in complex litigation, including in ERISA class actions. *See, e.g.*, *Pledger v. Reliance Tr. Co.*, 2019 WL 10886802, at *24–25 (N.D. Ga. Mar. 28, 2019) (granting summary judgment in defendants' favor on ERISA claim involving claims of breach of the duty of prudence); *Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1134-35 (D. Colo. 2020) (judgment awarding only a fraction of the damages sought in ERISA class action after bench trial); *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 108-09 (D. Mass. 2010) (ERISA claim value reduced 5x by adverse pre-trial orders). Given the risks Plaintiffs faced with a novel legal claim, the fourth and fifth factors favor preliminary approval.

Given the derivative nature of ERISA class actions, the sixth *Girsh* factor is

neutral, as there was minimal risk that this action could not have been maintained as a class action.

### 5. Ability of Defendants to Withstand a Greater Judgment (*Girsh* factor 7).

The seventh *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *Warfarin*, 391 F.3d at 537–38. However, "where the defendants' ability to pay greatly exceeds the potential liability, this factor is generally neutral." *Stevens*, 2020 WL 996418, at *5 (citing *In re CertainTeed Corp.*, 269 F.R.D. 468, 489 (E.D. Pa. 2010). "[T]he fact that [defendant] could afford to pay more does not mean that it is obligated to pay any more than what the ... class members are entitled to under the theories of liability that existed at the time the settlement was reached." *Warfarin*, 391 F.3d at 538. "Indeed, courts in this district regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts." *McGowan*, 2024 WL 1340329, at *10 (citing cases). Accordingly, this factor is neutral.

### 6. Range of reasonableness of the settlement in light of the best recovery and risks of litigation (*Girsh* Factors 8, 9).

"The last two *Girsh* factors, often considered together, evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case." *Stevens*, 2020 WL 996418, at *5 (citing *Warfarin*, 391 F.3d at 538). "[I]n conducting the analysis, the court must guard against demanding too large a

settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Esslinger*, 2012 WL 5866074, at *10 (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 324 (3d Cir. 2011)).

As Plaintiffs allege, participants' individual accounts were adjusted due to the Market Value Adjustment applied to the Plan's investment in the GIA after BBB resolved to terminate the Plan. The total Market Value Adjustment was $6,575,624. Settlement Agreement § 1.24. The Settlement therefore represents approximately 30% of the total Market Value Adjustment, which falls well within the range of acceptable recoveries, especially in light of the early stage of the litigation. *See* Dkt. 61-1 ("Second Lee Dec.") ¶ 13; *Lenahan*, 2006 WL 2085282, at *16 (overruling objection that settlement amounted to only 14% of estimated damages, explaining "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair"); *see also Strube v. Amer. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (2% recovery adequate); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir.1982) ("there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery"). Considering the substantial recovery in light of the substantial risk of no recovery, this factor

supports preliminary approval.

As discussed, the expense and resources consumed by a trial would have been substantial, especially when considering the need for expert testimony and likely post-trial appeals. "Thus, a settlement is advantageous to all parties," *Stevens*, 2020 WL 996418, at *6, and these factors favors approval.

### 7. Relevant *Prudential* Factors.

***Procedure for processing individual claims***. Rule 23(e)(2)(C)(ii) and *Prudential* examine the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims. As noted above, Class Members will have the option to receive their Settlement distribution in the form of a rollover to another qualified retirement account. Dkt. 61-1 ¶ 5. Class Members who do not request a rollover will automatically receive a direct distribution without the need to submit a claim. *Id.* This method of distribution minimizes barriers to receiving settlement distributions, potentially avoids negative tax consequences for Class Members, and is in line with numerous other ERISA class action settlements that have received court approval. *See, e.g.*, *Nesbeth v. ICON Clinical Rsch. LLC*, 2022 WL 22893879, at *4 (E.D. Pa. Mar. 10, 2022) (approving similar claims method in ERISA class action); *Stevens*, 2020 WL996418, at *6 (same).

***Reasonableness of provisions for attorneys' fees***. Rule 23(e)(2)(C)(iii) and

*Prudential* look at the terms of any proposed award of attorneys' fees, including timing of payment. Plaintiffs' Counsel has filed an application seeking an award of attorneys' fees in an amount not exceeding $650,000 (one-third of the Gross Settlement Amount), plus reimbursement of litigation costs. Settlement Agreement § 6.1.

In the Third Circuit, awards in common fund cases "generally range anywhere from nineteen percent (19%) to forty-five percent (45%) of the settlement fund." *McGowan*, 2024 WL 1340329, at *14. Accordingly, the requested one-third fee is common in the Third Circuit. *See, e.g.*, *Beltran v. Sos Ltd.*, No. CV 21-7454 (RBK/EAP), 2023 WL 319895, at *8 (D.N.J. Jan. 3, 2023), *report and recommendation adopted*, No. CV 21-7454 (RBK/EAP), 2023 WL 316294 (D.N.J. Jan. 19, 2023) (awarding one-third fee award).[3] It is also typical of fee awards in ERISA class actions such as this. *See, e.g.*, *Stevens*, 2020 WL 996418, at *13 (overruling objection and approving one-third fee award in ERISA class action, citing cases).[4] Plaintiffs' counsel have also sought reimbursement of

---

[3] *See also In re Liquid Aluminum Sulfate Antitrust Litig.*, 2018 WL 7108059, at *1 (D.N.J. Dec. 3, 2018) (same); *In re Merck & Co., Inc., Vytorin ERISA Litig.*, 2010 WL 547613, at *9–*11 (D.N.J. Feb. 9, 2010) (same); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 107 (D.N.J. 2001) (same).

[4] *See also Roubert v. Cap. One Fin. Corp.*, 2023 WL 5916714, at *9 (M.D. Fla. July 10, 2023) *report and recommendation adopted*, 2023 WL 5320195 (M.D. Fla. Aug. 18, 2023) (same); *Henderson v. Emory Univ.*, No. 16-2920-CAP, Dkt. 236 (N.D. Ga. Nov. 4, 2020) (same); *Kruger v. Novant Health*, 2016 WL 6769066, at *2 (M.D.N.C. Sept. 29, 2016) (same); *Karpik v. Huntington Bancshares Inc.*, 2021 WL

costs and expenses they have advanced on behalf of the Class. Settlement

Agreement § 6.1. That amount was $3,338.27, and additional expenses are not

expected to be material. Dkt. 64-1 ¶ 19.

    ***Ability for class members to opt out.*** Under Rule 23(b)(1), class members

cannot opt out of the class. However, that is not a bar to approval, especially

considering the proposed "robust notice" plan and the "opportunity to file

objections." *See Stevens*, 2020 WL 996418, at *6 (finding this factor did not

disfavor approval where ERISA class was certified under Rule 23(b)(1)); *Pfeifer*,

2018 WL 4203880, at *11 (same).

    In summary, the *Girsh* and *Prudential* factors, and requirements of Fed. R.

Civ. P. 23(e)(2) are satisfied, and the Court should grant final approval of the

Settlement.

### E.    The Settlement Treats Class Members Equitably.

    Under Rule 23(e)(2)(D), the Court must consider whether the proposal treats

class members equitably relative to each other. The Settlement proceeds will be

distributed to Class Members on a *pro rata* basis based on a common allocation

formula. *See* Settlement Agreement § 5.1. According to that process, individual

Class Members will receive *pro rata* distributions based on each Class Member's

---

757123, at *7 (S.D. Ohio Feb. 18, 2021) (same); *Sims v. BB&T Corp.*, 2019 WL
1995314, at *2 (M.D.N.C. May 6, 2019) (same); *Clark v. Oasis Outsourcing
Holdings Inc.*, No. 18-81101, Dkt. 23 at ¶ 1 (S.D. Fla. Dec. 20, 2018) (same).

percentage of the Market Value Adjustment applied to their individual Plan

account. Courts in this Circuit and elsewhere have found such *pro rata*

distributions appropriate. *Nesbeth*, 2022 WL 22893879, at *4; *Feinberg v. T. Rowe*

*Price Grp., Inc.*, 610 F. Supp. 3d 758, 770 (D. Md. 2022); *McWhorter v. Ocwen*

*Loan Servicing*, 2019 WL 9171207, at *12 (N.D. Ala. Aug. 1, 2019).

## II.    THE SETTLEMENT CLASS NOTICE WAS REASONABLE.

The Settlement Class notice program in this case was also reasonable and

satisfied the requirements of Rule 23 and due process. The "best notice"

practicable under the circumstances includes individual notice to all Settlement

Class Members who can be identified through reasonable effort. Fed. R. Civ. P.

23(c)(2)(B). That is precisely the type of notice provided here.

The Settlement Administrator provided direct notice of the Settlement to the

Settlement Class via first-class U.S. Mail. This type of notice is presumptively

reasonable. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Mack*

*Trucks, Inc. v. UAW*, 2011 WL 4402136, at *4 n.6 (E.D. Pa. Sept. 22, 2011). The

record reflects that 99.1% of Notices were successfully delivered, confirming the

Notice program's effectiveness. Simmons Dec. ¶ 3; *see Mirakay v. Dakota*

*Growers Pasta Co.*, 2014 WL 5358987, at *2, 11 (D.N.J. Oct. 20, 2014) (notice

that reached 80% of class was effective).

The content of the Notices was also reasonable. The Notices included,

among other things: (1) the nature of the claims asserted in the Action; (2) the scope of the Settlement Class; (3) the terms of the Settlement Agreement; (4) the process for submitting a Rollover Form; (5) Settlement Class Members' right to object to the Settlement and the deadline for doing so; (6) the Settlement Class's release; (7) the identity of Class Counsel and the compensation they will seek in connection with the Settlement; (8) the date, time, and location of the Fairness Hearing; and (9) Settlement Class Members' right to appear at the Fairness Hearing. This Notice is fully consistent with the Court's Order Granting Preliminary Approval of Class Action Settlement, Dkt. 62 ¶ 5, and is more than sufficient to meet the Rule 23 standard. *See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013) (notices satisfy Rule 23 if they "contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement"). Notably, no Settlement Class Member has claimed that the Notices were deficient, and to the extent that they had any questions, they could review the Settlement Website, call the toll-free telephone line, or contact the Settlement Administrator or Class Counsel.

## III.   THE CERTIFICATION OF THE SETTLEMENT CLASS SHOULD BE REAFFIRMED.

Finally, the Settlement Class certification should be reaffirmed for purposes of this Settlement. In its Order Granting Preliminary Approval of Class Action

Settlement the Court certified the following Settlement Class:

> All Participants whose individual Plan accounts were adjusted by any amount due to the Market Value Adjustment that was applied to the Plan's interest in the MassMutual Guaranteed Interest Account after Bed Bath & Beyond passed a resolution to terminate the Bed Bath & Beyond, Inc. 401(k) Savings Plan in 2023, along with their Beneficiaries and Alternate Payees of record, excluding Defendants.

Dkt. 62 ¶ 2. Nothing has changed since the Court certified the Settlement Class for Preliminary Approval. The Settlement Class is numerous (consisting of 2,107 Settlement Class Members), the settled claims involve common issues relating to the Plan, and Plaintiffs are typical of other Settlement Class Members and adequate to represent the Settlement Class based on their participation in the Plan and involvement in the lawsuit. Moreover, breach of fiduciary duty claims under ERISA are "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class." *In re Schering Plough Corp.*, 589 F.3d 585, 604 (3d Cir. 2009). Accordingly, the Court should reaffirm its certification of the Settlement Class for purposes of final approval.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement and enter the accompanying proposed order.

Respectfully Submitted,

Date: September 9, 2025         **MORGAN & MORGAN, P.A.**

/s/ Andrew R. Frisch
Andrew R. Frisch, NJ Bar No. 038452000

21

8151 Peters Road, Suite 4000
Plantation, FL 33324
Telephone: (954) 967-5377
Facsimile: (954) 327-3013
afrisch@forthepeople.com

Marc R. Edelman, FL Bar No. 0096342*
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 257-0572
medelman@forthepeople.com

**ENGSTROM LEE LLC**
Carl F. Engstrom, MN Bar No. 0396298*
Jennifer K. Lee, MN Bar No. 0399012*
323 Washington Ave. N., Suite 200
Minneapolis, MN 55401
Telephone: (612) 305-8349
Facsimile: (612) 677-3050
cengstrom@engstromlee.com
jlee@engstromlee.com

**WENZEL FENTON CABASSA P.A.**
Brandon J. Hill, FL Bar No. 0037061**
1110 N. Florida Ave., Suite 300
Tampa, FL 33602
Telephone: (813) 224-0431
Facsimile: (813) 229-8712
bhill@wfclaw.com

*Admitted *pro hac vice*
***pro hac vice* application forthcoming

ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on September 9, 2025, the foregoing was

electronically filed using the CM/ECF system, causing a Notice of Electronic

Filing to be transmitted to all counsel of record.

<u>/s/ Andrew R. Frisch</u>
